Merrimack
No. 82-029
No. 82-379

BLUE CROSS/BLUE SHIELD OF NEW HAMPSHIRE–VERMONT

v.

MARC ST. CYR *& a.*

BLUE CROSS/BLUE SHIELD OF NEW HAMPSHIRE–VERMONT

v.

AMERICAN POLICYHOLDERS INSURANCE COMPANY

March 24, 1983

138

*Branch & Greenhalge P.A.*, of Concord (*Frederic T. Greenhalge* on the brief and orally), for the plaintiff, Blue Cross/Blue Shield of New Hampshire-Vermont, in No. 82-029.

*Wiggin & Nourie*, of Manchester (*Dort S. Bigg* and *Sterling H. Schoen, Jr.*, on the brief, and *Mr. Schoen* orally), for the defendant Marc St. Cyr.

*Branch & Greenhalge P.A.*, of Concord (*Frederic T. Greenhalge* on the brief), by brief for the plaintiff, Blue Cross/Blue Shield of New Hampshire-Vermont, in No. 82-379.

*Wiggin & Nourie*, of Manchester (*Sterling H. Schoen, Jr.*, on the brief), by brief for the defendant, American Policyholders Insurance Company.

KING, C.J. These consolidated appeals require us to determine whether the plaintiff, Blue Cross/Blue Shield of New Hampshire-Vermont (Blue Cross/Blue Shield), followed proper procedures in attempting to enforce its contractual subrogation rights.

In the first case the defendant, Marc St. Cyr, was seriously injured when a motorcycle on which he was a passenger was struck by a school bus. At the time of the accident, Marc St. Cyr was a minor. Most of Marc St. Cyr's medical expenses resulting from the accident were paid by Blue Cross/Blue Shield.

In July 1979, Blue Cross/Blue Shield advised the boy's father, Emile St. Cyr, that his health insurance policy contained a subrogation clause enabling the company to recover medical expenses that it had paid on behalf of Marc from third parties liable for such injuries. At the same time, the company warned Emile St. Cyr not to enter into a settlement agreement with the bus driver or the bus driver's employer unless Blue Cross/Blue Shield was "fully protected." Counsel for Emile St. Cyr notified Blue Cross/Blue Shield that he did not recognize Blue Cross/Blue Shield's interest.

In September 1980, Blue Cross/Blue Shield instituted the instant action against Marc St. Cyr to recover medical expenses it had paid on his behalf while he was a minor. It also filed a petition to attach $3,000 of any recovery obtained by Marc from the bus driver's insurance carrier. It brought no action against Emile St. Cyr.

In December 1980, Marc and Emile St. Cyr filed separate actions against the bus driver and the bus driver's employer. Marc, having reached the age of majority, sought to recover damages for pain and suffering, loss of earnings and loss of earning capacity, and *future* medical expenses. Emile St. Cyr sought to recover all medical and hospital expenses which he had incurred for the treatment of Marc, while he was a minor, including the medical expenses paid for by Blue Cross/Blue Shield.

Marc St. Cyr filed a motion to dismiss Blue Cross/Blue Shield's action against him. The Master (*Frank B. Clancy*, Esq.) concluded that Blue Cross/Blue Shield was entitled to "specific enforcement of its subrogation rights" against Marc St. Cyr because he had received the benefits of Blue Cross/Blue Shield's coverage and should not be allowed to retain a windfall. He stated, however, that the Blue Cross/Blue Shield action was premature because Marc St. Cyr had not yet established any rights against the bus driver. He further stated that Blue Cross/Blue Shield should move to intervene in the St. Cyrs' actions in superior court. The master's recommendation was accepted and approved by the Trial Court (*Cann*, J.).

The defendant, Marc St. Cyr, challenges the trial court's ruling that Blue Cross/Blue Shield can "specifically enforce" its subrogation rights against him. We hold that Blue Cross/Blue Shield had no right in this case to recover from Marc the sums it had paid for his medical expenses while he was a minor and not legally responsible for their payment. The trial court's ruling on this issue was therefore erroneous.

■ When an insurance policy contains a valid subrogation clause, the insurer's subrogation rights are determined by the clause. 44 AM. JUR. 2d *Insurance* § 1794, at 784 (1982). In the present case, the relevant provisions of the subrogation clause provided:

> "In the event of any payment of benefits under this Certificate, THE PLAN shall be subrogated to all of the Member's rights of recovery of those benefits against any person or organization, and the Member shall cooperate with THE PLAN and do whatever is necessary to secure those rights."

Because both Marc and his father were by definition under the

policy "members" of the Blue Cross/Blue Shield plans, Blue Cross/Blue Shield is subrogated to their respective rights to recover these medical benefits. In order to determine the effect of this subrogation, we must decide whether either or both of them had the right to recover medical expenses incurred on Marc's behalf during his minority, as a result of the accident.

■■ Generally, a parent rather than a minor is liable for the minor's medical or hospital expenses when the minor is living with or supported by his parents. 42 AM. JUR. 2d *Infants* § 72, at 74 (1969); 59 AM. JUR. 2d *Parent and Child* § 87, at 184 (1971); *see Heath v. Seymour*, 110 N.H. 425, 429–30, 270 A.2d 602, 605 (1970). As a result, we have held that the parent, rather than the child, is entitled to recover the medical expenses of a minor child injured by another. *Heath v. Seymour*, 110 N.H. at 429, 270 A.2d at 605.

■ Thus, Marc St. Cyr had no right to recover medical expenses incurred on his behalf during his minority due to the accident. Blue Cross/Blue Shield correspondingly had no rights under the subrogation clause that it could "specifically enforce" to recover those expenses. Emile St. Cyr was liable for the cost of medical services furnished to his minor son, Marc, and had the right to recover them from the bus driver or the bus driver's employer. Under the terms of the subrogation clause, Blue Cross/Blue Shield was subrogated to Emile St. Cyr's rights to recover these benefits.

■ Blue Cross/Blue Shield argues that we should nonetheless permit it to recover the medical expenses from Marc St. Cyr in order to prevent Emile St. Cyr from settling with the bus driver or the bus driver's employer for a small amount in return for a larger settlement for his son Marc. We do not find this argument persuasive because Blue Cross/Blue Shield has other adequate remedies to protect its subrogation rights against Emile St. Cyr. After Emile St. Cyr instituted his action against the bus driver and the bus driver's employer to recover the medical expenses he incurred while Marc was a minor, Blue Cross/Blue Shield, in the absence of an agreement that its interests would be protected, had the right to intervene in the suit to protect its interests. *Sibson v. Robert's Express*, 104 N.H. 192, 194, 182 A.2d 449, 450 (1962).

Further, if Emile St. Cyr, or the insurance carrier for the third-party tortfeasor, refused to acknowledge and protect Blue Cross/Blue Shield's interest, or if Emile St. Cyr failed to bring suit against the bus driver or the bus driver's employer, Blue Cross/Blue Shield had the right to enforce its subrogation rights by itself instituting an

action in the name of Emile St. Cyr. *Montello Shoe Co. v. Suncook Industries*, 92 N.H. 161, 161–62, 26 A.2d 676, 676 (1942).

■ Additionally, Blue Cross/Blue Shield appears to argue that we should consider Emile St. Cyr a party defendant in the instant action. It contends that service was made on Emile St. Cyr because he was the recipient of substitute service of the Blue Cross/Blue Shield writ. This substitute service was approved by the superior court only because Marc St. Cyr was in the military service when the suit was instituted. Nevertheless, Blue Cross/Blue Shield argues that this was the equivalent of suing Emile St. Cyr because he had actual notice of Blue Cross/Blue Shield's claim. We reject this argument. Emile St. Cyr did not have actual notice of an action against him. On the contrary, the substitute service indicated that Blue Cross/Blue Shield had not sued him, but had sued his son.

■ In conclusion, we hold that the trial court's ruling that Blue Cross/Blue Shield could specifically enforce its subrogation rights against Marc St. Cyr for medical expenses while he was a minor was erroneous and should be reversed. In doing so, we note that the question of responsibility for future medical expenses has not been raised on the appeal. We find it unnecessary to address other issues raised by the defendant.

In the second case, Aaron Fadden, also a minor, was injured on August 28, 1976, by Raymond Edson. Edson was insured by the defendant American Policyholders Insurance Company (American Policyholders). The medical expenses incurred by Aaron's father were paid in part by the plaintiff Blue Cross/Blue Shield. When Aaron Fadden and his father, James H. Fadden, filed suit against Edson, Blue Cross/Blue Shield notified Edson's insurer, American Policyholders, that it was "subrogated to the extent of monies advanced or to be advanced for medical services to their subscriber..." and that "any funds to be paid in settlement [of the claim] are subject to this claim." In response to this notice, American Policyholders stated that it would "honor [Blue Cross/Blue Shield's] lien when final settlement is reached."

In November 1979, Aaron and James Fadden and Raymond Edson agreed to settle the claim, and the settlement agreement, including a general release of all of Edson's liability, was approved by the Superior Court (*Johnson*, J.). This agreement, although mentioning medical expenses incurred by James H. Fadden and paid for in part by Blue Cross/Blue Shield, failed to provide for payment to Blue Cross/Blue Shield of the medical expenses paid by it.

In February 1982, Blue Cross/Blue Shield brought the instant suit against American Policyholders, Edson's insurer, alleging that

American Policyholders had "tortiously" interfered with Blue Cross/Blue Shield's contractual rights by settling the litigation without notice. The defendant, American Policyholders, filed a motion for summary judgment claiming that any interference was negligent, not intentional. In support of its motion, the defendant filed an affidavit by its attorney, Dort S. Bigg, which stated that he either never received notice of the plaintiff's claim or else merely neglected to note it.

Blue Cross/Blue Shield opposed the motion and introduced correspondence between it and the defendant in which the defendant stated that it would honor Blue Cross/Blue Shield's claim. The Trial Court (*Cann*, J.) granted the defendant's motion for summary judgment. The plaintiff appeals the granting of summary judgment. We reverse and remand.

Blue Cross/Blue Shield argues that summary judgment was improperly granted because the statement by the defendant's counsel that he acted negligently was not conclusive proof that American Policyholders did not act intentionally.

■■ Blue Cross/Blue Shield's writ alleged "tortious" interference with a contractual relationship. This tort requires the plaintiff to prove that the defendant *intentionally* interfered with the performance of a contract between another and a third person. *Hangar One, Inc. v. Davis Associates, Inc.*, 121 N.H. 586, 589, 431 A.2d 792, 794 (1981). We have not recognized liability for negligent interference with a contractual relationship. *See* RESTATEMENT (SECOND) OF TORTS § 766C (1977). Consequently, the question of the defendant's intent was crucial to the plaintiff's claim.

■■ The plaintiff argues that the affidavit which supported the defendant's motion for summary judgment was an insufficient basis for the granting of summary judgment because, although it stated that the defendant's counsel had acted negligently, not intentionally, it did not state that the defendant, American Policyholders, had not acted intentionally. We agree that merely because the defendant's counsel may have acted negligently does not necessarily mean that the defendant did not act intentionally. While a principal may be liable for the negligence of an agent, it does not follow that the mental states of the agent and the principal must be the same. *Cf. Estes v. Crosby*, 171 Wis. 73, 81, 175 N.W. 933, 936 (1920) (subagent not liable for misrepresentations made in good faith, but agent liable for knowing misrepresentation).

■ Summary judgment should be granted on the motion of a party if the pleadings show that there is no genuine issue as to any

material fact, and that the moving party is entitled to judgment as a matter of law. RSA 491:8-a, III (Supp. 1981). After the moving party makes such a showing, the party opposing the summary judgment must, by affidavits, reference to depositions, or answers to interrogatories, show that there is a genuine issue for trial; he may not rest upon mere allegations or denials of his pleading. RSA 491:8-a, IV (Supp. 1981). In this case, the defendant, American Policyholders, was required to show that there was no genuine issue of material fact as to its intention. Because the defendant failed to make such a showing, the plaintiff was not required to rebut the showing, and the court incorrectly granted the defendant's motion for summary judgment.

Having determined that the case must be remanded, a final problem is what form Blue Cross's action should have taken. We note that it would have been more appropriate for Blue Cross/Blue Shield to bring an action against American Policyholders for breach of its promise to protect Blue Cross/Blue Shield's interests, rather than instituting an action for tortious interference with a contractual relationship. American Policyholders specifically promised to protect Blue Cross/Blue Shield's right to recover medical expenses it paid on behalf of Aaron Fadden, and Blue Cross/Blue Shield relied on this promise by not intervening in the underlying action. See RESTATEMENT (SECOND) OF CONTRACTS § 90 (1979). In the interest of justice, we will permit the plaintiff to amend its writ within thirty days of remand to add such a count.

*No. 82-029 reversed; No. 82-379 reversed and remanded for further proceedings consistent with this opinion.*

All concurred.