Hillsborough
No. 87-015

KATHERINE E. ROY & a.

v.

DUC DUCNUIGEEN, M.D., & a.

October 15, 1987

*Frederic T. Greenhalge,* of Concord, by brief and orally, for the intervenor Blue Cross/Blue Shield of New Hampshire.

*Law Offices of James J. Kalled,* of Ossipee (*Harvey J. Garod* on the brief and orally), for the plaintiffs, Katherine E. Roy, Doreen G. Roy, and David E. Roy.

PER CURIAM. The intervenor Blue Cross/Blue Shield of New Hampshire appeals an order of the Superior Court (*Dalianis,* J.) setting the amount that the intervenor would receive from a settlement, as subrogee of two of the plaintiffs. We reverse and remand.

The plaintiffs brought this medical malpractice action as next friends of their injured child, and on their own behalf for medical expenses of $42,525.56 and other out-of-pocket charges of $5,339.37. Without the intervenor's participation, the parties settled the actions for $200,000, an amount within the limits of the defendants' insurance coverage.

Although the intervenor insured the plaintiff parents against the medical expenses and paid them $41,743.94, as to which the intervenor is their undisputed subrogee, the intervenor's post-settlement claim to reimbursement met with resistance. The plaintiffs argued that the settlement was a "reduced recovery" within the meaning of *Dimick v. Lewis*, 127 N.H. 141, 497 A.2d 1221 (1985), but the parties and the intervenor could not agree on the effect to be given to the allegedly reduced recovery in evaluating the amount of the intervenor's allowable subrogation claim. The trial court awarded $29,766 in attempting to apply *Dimick*, but it failed to make separate findings of the losses incurred by the parents and the minor plaintiff. This court accordingly vacated the award and remanded for recalculation on the basis of such findings.

On remand, the trial judge once again failed to make any findings of the plaintiffs' respective losses, but concluded without explanation that the intervenor's allowable claim as subrogee was $6,533.97. The trial court apparently took that figure from a letter sent by plaintiffs' counsel, Mr. Garod, to counsel for the intervenor, which was received by the trial court together with evidence that the real value of the combined claims of parents and child was at least $300,000. Although the letter reveals counsel's reasoning in reaching the figure, we need not analyze the thought process, for reasons given below.

The intervenor has appealed the most recent order, and has asked us, *inter alia*, to reconsider the holding of *Dimick* and to limit its applicability. We respond by noting that, while we are willing to reexamine *Dimick* in a proper case, the case before us falls outside the *Dimick* rule.

*Dimick* addressed issues that may arise in consolidated actions brought by parent and minor child for damages occasioned by injury to the child. We had previously held that a "parent, rather than the child, is entitled to recover the medical expenses of a minor child injured by another," *Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 141, 459 A.2d 226, 228 (1983), and that the subrogated insurer who pays the medical expenses is a subrogee of the parent, *id.* In *Dimick* we held that when the combined claims of parent and child are settled for a single figure, the plaintiff and defendant may not allocate to the child a portion of the recovery attributable to the parent, in order to limit enforcement of the subrogee's claim against the parent's share. *Dimick, supra* at 145, 497 A.2d at 1224.

We further held in *Dimick* that when such a settlement "involves a reduced recovery," 127 N.H. at 144, 497 A.2d at 1223, the respective shares allocated to parent and minor should bear the same proportions to the total settlement that the full loss of each would have borne to a complete recovery. *Id.* at 145, 497 A.2d at 1224. The subrogee's rights will then be limited to the amount of the parent's reduced recovery that is attributable to the medical expenses that the subrogee has paid. (The subrogee-intervenor here agrees that the amounts of the subrogation claim and of the parents' share from which it may be satisfied may be reduced, respectively, by the amounts of legal expenses attributable pro rata to the recovery's component for medical expenses paid by the intervenor and to the parents' share. Such reductions were not contested either in *Dimick* or in the instant case.)

The difficult step in applying *Dimick*, however, is the calculation of the true or full extent of the combined losses. The medical expense portion is easily valued, but the intangible elements of the minor's claim are not. The process by which counsel and the court addressed the issue of the full value of the plaintiffs' losses in this case raises the serious question whether we should continue to adhere to *Dimick*.

Because we are satisfied that this case does not fall within the *Dimick* rule, however, we do not today decide the future of that holding. The significant distinction between the two cases appears when we note that the parties in *Dimick* settled the plaintiffs' combined claim at the policy limits of the defendant's insurance coverage. *Dimick*, 127 N.H. at 143, 497 A.2d at 1222. The court recognized that the true value of the plaintiffs' claims, had the parties gone to trial and verdict, could have been greater than the amount available under the policy, and we allowed the settlement to be treated as a reduced recovery, provided the plaintiffs could establish a combined value of the claims in excess of the settlement amount.

There is, however, no justification for treating a settlement within the policy limits as a reduced recovery. When the enforceability of the settlement itself is not in question, there is no reason to assume that a plaintiff who settles for less than the defendant's policy limits has acted irrationally in choosing not to test the value of his claim by litigating his case to verdict. *See Illinois Automobile Ins. Exch. v. Braun*, 280 Pa. 550, 557–58, 124 A. 691, 693 (1924). The plaintiff in such a case is in a demonstrably different position from that of the plaintiff who settles at the policy limits of the defendant's insurance coverage, *see Dimick*, 127 N.H. 141, 497 A.2d

1221, or who obtains a verdict that is not paid, *see Germer v. Public Service Mutual Insurance Co.*, 99 N.J. Super. 137, 238 A.2d 713 (1967), or whose undisputed loss exceeds the amount available from insurance, *see Wimberly v. American Casualty Co. of Reading, Pa.*, 584 S.W.2d 200 (Tenn. 1979).

In a case such as this, therefore, the undisputed amounts of the parents' medical and other out-of-pocket costs must be assumed to be covered by the amount of the settlement. If the parents choose to forego reimbursement of out-of-pocket expenses not affecting the subrogation claim, they are, of course, free under State law to do so. But the amounts subject to the subrogee's claims must be allocated to the parents in order to recognize the intervenor's undisputed subrogation right.

Therefore, the plaintiff parents' share of the settlement in this case must be set at not less than $41,743.94, less the pro rata share of legal expenses, against which the intervenor is entitled to impose its entire subrogation claim, subject to a like reduction.

*Reversed and remanded.*